## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| AGRIPROCESSORS, INC., | ) | |
| | ) | **BANKRUPTCY NO. 08-02751** |
| Debtor. | ) | |
| | ) | |
| JOSEPH E. SARACHEK, | ) | |
| in his capacity as | ) | |
| CHAPTER 7 TRUSTEE, | ) | **ADVERSARY NO. 10-09220** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TWIN CITY POULTRY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This case is before the Court on the parties' Cross-Motions for Summary

Judgment on Trustee's Complaint seeking to avoid and recover preferential

transfers to an insider under § 547(b) and fraudulent conveyances under § 548 that

Defendant received from Debtor.  Keith Larson represented the Trustee.  Ryan

Murphy and Jeff Courter represented Defendant.  After a hearing on May 2, 2012,

the Court took the matter under advisement.  This is a core proceeding under 28

U.S.C. § 157(b)(2)(F).

## STATEMENT OF THE CASE

Trustee's complaint sought to avoid five transfers totaling $621,818.81.

Trustee made a motion for partial summary judgment limited to the question of

whether Defendant was an insider subject to the one-year period for avoiding

preferential transfers under § 547(b).  Defendant filed a resistance to Trustee's

Motion and a Cross-Motion for Summary Judgment on both Trustee's claims for

recovery: (1) preferential payment to an insider and (2) fraudulent conveyance.

Defendant asserts that the undisputed facts show it was not an insider subject to the

one-year period for preference claims.  Defendant argues Trustee's preference

claims fail as a matter of law when properly limited to the non-insider, ninety-day

preference period.  Defendant also argues that even if Trustee established a

preference to an insider, Trustee cannot recover as a matter of law because the

transfers were a contemporaneous exchange for value under § 547(c).  Defendant

argues the Trustee's fraudulent conveyance claims under § 548 fail as a matter of

law because Defendant provided reasonably equitvalent value for all transfers

Trustee seeks to set aside.

The Court concludes that Defendant has shown that none of the five

challenged transfers could be recovered under § 548(a)(2) as constructively

fraudulent as a matter of law.  It is undisputed Debtor received reasonably

equivalent value on those transfers.  Because all but $71,818.81 in transfers could

only be recovered under a fraudulent conveyance claim, that is the maximum

2

amount of a preferential transfer that could be recovered here as an "insider" preference. The Court concludes there are genuine issues of fact of the question of whether Defendant was an insider. The Court also finds there are genuine issues of fact on the question of whether the single remaining transfer was a contemporaneous exchange of new value entitling Defendant to a complete defense under § 547(c).

## FACTUAL BACKGROUND

Debtor owned and operated one of the nation's largest kosher meatpacking and food-processing facilities in Postville, Iowa. On November 4, 2008, Debtor filed a Chapter 11 petition in the Bankruptcy Court for the Eastern District of New York. Debtor's bankruptcy petition and accompanying documents recited that its financial difficulties resulted from a raid conducted by U.S. Immigration and Customs Enforcement. A total of 389 workers at the Postville facility were arrested. The raid led to numerous federal criminal charges, including a high-profile case against Debtor's President, Sholom Rubashkin.[1] Debtor's Petition also stated it had over 200 creditors and assets and liabilities in excess of $50,000,000.00.

---

[1] Rubashkin was convicted on 85 counts of financial fraud.

3

The Bankruptcy Court for the Eastern District of New York eventually approved the appointment of Joseph E. Sarachek as the Chapter 11 trustee. The Court concluded that appointing a trustee was necessary in part "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management" under § 1104(a)(1). After hearings in a later proceeding, the Court transferred the case to this Court on December 15, 2008. This Court eventually granted the Trustee's motion to convert the case to a Chapter 7 bankruptcy. The U.S. Trustee for this region retained Sarachek as the Chapter 7 trustee.

Sarachek filed over 150 adversary cases including this case against Defendant Twin City Poultry ("TCP") and a companion case against its President Tzvi "Steve" Cohen. TCP is a kosher food distributor in Minneapolis, Minnesota. TCP had a long relationship with Debtor. TCP eventually purchased much of its Kosher meat product from Debtor.

TCP and Debtor began their relationship sometime around 1985. Debtor was in the Kosher meat business and TCP was a Kosher meat product distributor. Debtor's sales department—probably through Heshy Rubashkin—would contact

4

TCP's meat buyer, which was Hillel Roberts, who was also TCP's majority owner and President.

Cohen, TCP's current President, assumed majority control of TCP and became president after the death of Hillel Roberts in 2006.  TCP had employed Cohen since 1978.  When Cohen started, TCP had two employees.  Now it has between fifty and eighty employees.

Cohen described the TCP–Debtor relationship as "a business relationship, but there was an affinity because [the officers of each were] both Orthodox Jews." (Cohen Depo., ECF Doc. No. 51-3, at 17.)  Cohen agreed the Orthodox Jewish community was "a close-knit community."  Id.  He agreed that was especially true when they are dealing with the higher level of glatt Kosher.  Id.  Cohen noted that TCP started making loans to Debtor in the 1990s.  He agreed that TCP was not a lending or banking institution and generally did not make loans to other corporations or individuals.  Id.  He noted that over the years TCP made more than 105 loans to Debtor.

He described the reason for the loans as:

A.     If we had cash available - - they were our primary processor.  It
       helped - - it helped get the product to us, let's put it that way.
       We have favored nation status by virtue of the fact that we were
       helpful with them in their financial needs as well.  We had

> product - - we had available dollars and, therefore, we loaned to
> them on an ongoing basis, and some back and forth.

(Cohen Depo., ECF Doc. No. 51-3, at 26.)  He says TCP provided loans because

Sholom Rubashkin asked.  Cohen never quizzed Rubashkin about why he needed

the funds or why he didn't just use a bank.  Cohen did not think it was unusual

because a processor, like Debtor, had to pay cash up front for the product—and it

took a while to process and turn the product to cash.  Cohen looked at the loans as

being like "an advance" on what TCP would eventually owe anyway.  Cohen also

admitted that he personally provided financing to Debtor.  Cohen says he made the

loans personally when he had funds available and TCP did not.

The process for the loans was simple.  Debtor would request funding from

Defendants, TCP or Cohen would draft a check made payable to the Debtor, and

Debtor would allegedly repay the loan.  There was no particular schedule for

payment and each transaction was unique in its terms.  The balance owing was in

constant flux.  The loans had no consistent maturation date and were paid off

intermittently.  None of the financing agreements were documented, secured by

collateral, or subject to interest charges.

Cohen and Sholom Rubashkin were friends dating to a time when they both

lived in Minneapolis.  They got to know each other and engaged in religious

6

studies together.  There was also a friendship between their families.  Cohen and

Rubashkin became close and spoke on the phone every morning at 10:00 or 11:00

for several years.  They discussed business matters and often discussed the balance

of the accounts and advances Defendants made to Debtor.  Cohen understood the

above-described loan arrangement basically functioned as a trade credit

relationship between TCP and Debtor.  (Cohen Depo., ECF Doc. No. 51-3, at 29–

31.)

Trustee here is attempting to recover five payments made from Debtor to

Defendant TCP in 2007.  In particular, those payments are: (1) a July 29, 2007

payment of $250,000; (2) an August 8, 2007 payment of $75,000; (3) an August

16, 2007 payment of $75,000; (4) an October 16, 2007 payment of $150,000; and

(5) a November 23, 2007 payment of $71,818.81.  TCP asserts that all of these

payments retired short-term loans, and thus existing debts, and cannot be

considered fraudulent transfers under § 548(a)(2).

TCP specifically documents its loans as follows:  (1) a $250,000 loan on

June 29, 2007; (2) a $75,000 loan on July 31, 2007; (3) a $75,000 loan on August

15, 2007; (4) a $150,000 loan made in two parts:  $100,000 on August 31, 2007

and $50,000 on October 16, 2007; and (5) a $71,818.81 loan on November 21,

7

2007.  TCP points out that while Trustee has alternatively pled preferential transfer to insider claims under § 547(b), that only one of the transfers at issue—the last one for $71,818.71—even falls within the one year "insider" preference period.  It is undisputed Debtor filed for bankruptcy on November 4, 2008.

TCP argues Trustee's constructive fraud claims under § 548(a)(2) fail as a matter of law.  TCP asserts that it is undisputed that Debtor got reasonably equivalent value on all five transfers because those transfers paid existing debt.  TCP argues Trustee's "insider" preference claims under § 547 is limited to the one transfer falling within the one-year period cannot be recovered as a preference.  TCP claims Trustee has failed to show—and cannot show—it was an insider or that the "preference" provided TCP with more than it would have gotten in the Chapter 7 Bankruptcy.  Finally, TCP argues that even if such showing could be made, TCP has proved the statutory affirmative defense of a contemporaneous exchange of new value under § 547(c).

Trustee resists TCP's motion arguing that the claims for fraudulent transfer are valid because TCP essentially participated in or helped out the various other frauds Debtor committed.  Trustee also argues he can show TCP did get more than it would have in the Chapter 7 Bankruptcy because it had no rights to set off and

8

was not a secured creditor.  Trustee also argues that there was no contemporaneous

exchange for new value because the short term loans here do not qualify.  Finally,

Trustee makes his own Motion for Summary Judgment arguing TCP is an insider

of Debtor for preference purposes as a matter of law.  TCP resists.

## CONCLUSIONS OF LAW AND DISCUSSION

### A.    SUMMARY JUDGMENT STANDARDS

Summary judgment is governed by Rule 7056 of the Federal Rule of

Bankruptcy Procedure.  Rule 7056 applies Federal Rule of Civil Procedure 56 in

adversary proceedings.  Rule 56 states, in relevant part, that: "The court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  The granting of "[s]ummary judgment is proper if, after viewing the

evidence and drawing all reasonable inferences in the light most favorable to the

nonmovant, no genuine issues of material fact exist and the movant is entitled to

judgment as a matter of law."  Hayek v. City of St. Paul, 488 F.3d 1049, 1054 (8th

Cir. 2007).  Summary judgment is appropriate when only questions of law are

involved.  Podkovich v. Glazer's Distribs. of Iowa, Inc., 446 F. Supp. 2d 982, 995

(N.D. Iowa 2006) (quoting <u>Aucutt v. Six Flags Over Mid-America, Inc.</u>, 85 F.3d 1311, 1315 (8th Cir. 1996)).

The burden of showing there are no genuine issues of material fact belongs to the moving party.  <u>Winthrop Res. Corp. v. Eaton Hydraulics, Inc.</u>, 361 F.3d 465, 468 (8th Cir. 2004).  "Once the movant has supported the motion, the non-moving party 'must affirmatively show that a material issue of fact remains in dispute and may not simply rest on the hope of discrediting the movant's evidence at trial.'" <u>Schnittjer v. Houston (In re Houston)</u>, 385 B.R. 268, 271 (Bankr. N.D. Iowa 2008) (quoting <u>Barge v. Anheuser-Busch, Inc.</u>, 87 F.3d 256, 260 (8th Cir. 1996)).  "When a moving party has carried its burden under Rule 56(c), the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the depositions, answers to interrogatories, and admissions on file, <u>designate specific facts</u> showing there is a genuine issue for trial."  <u>G.E. Capital Corp. v. Commercial Servs. Grp., Inc.</u>, 485 F. Supp. 2d 1015, 1022 (N.D. Iowa 2007) (quotations omitted) (emphasis added).

"A 'material' fact is one 'that might affect the outcome of the suit under the governing law . . . .'"  <u>Johnson v. Crooks</u>, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).  An issue of

material fact is genuine if a reasonable fact-finder could return a verdict for the

nonmoving party on the question.  <u>Anderson</u>, 477 U.S. at 252.  Evidence that raises

only "some metaphysical doubt as to the material facts" does not create a genuine

issue of fact.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586

(1986).  "'Where the record taken as a whole could not lead a rational trier of fact

to find for the nonmoving party, there is no genuine issue for trial.'"  <u>Blocker v.

Patch (In re Patch)</u>, 526 F.3d 1176, 1180 (8th Cir. 2008) (quoting <u>Matsushita</u>, 475

U.S. at 587).  The parties have made cross motions for summary judgment on the

Trustee's claims.

### B.    THE TRUSTEE'S CLAIMS

The Trustee has advanced two rationales for recovering funds Debtor

transferred to TCP.  Trustee first seeks to recover under § 548, which permits the

Trustee to avoid fraudulent conveyances made within two years of the petition

date.  11 U.S.C. § 548(a)(1).  Trustee asserts the transfers here are fraudulent

because the Debtor was insolvent, or became insolvent as a result of transferring

property, and did not receive equivalent value from TCP for the transfers.  11

U.S.C. § 548(a)(1)(B).  Trustee also seeks to recover under § 547 of the

Bankruptcy Code which empowers the Trustee to avoid preferential transfers.  11

11

U.S.C. § 547(b).  Trustee asserts TCP is an "insider," and that the estate may

recover any preferential transfers made within the one year before the petition date.

11 U.S.C. § 547(b)(4).

## C.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON FRAUDULENT CONVEYANCE CLAIM

To recover a "constructively fraudulent" conveyance under § 548, Trustee

must show that the Debtor received less than equivalent value and was insolvent on

the date of, or as the result of, the transfer to TCP.  11 U.S.C. § 548(a)(1)(B).  TCP

requests summary judgment on this issue, claiming that it provided equivalent

value to Debtor.  Trustee resists, contending equitable principles should bar

Defendant from advancing an affirmative defense as a matter of law.

### 1.    Defendants' Equivalent Value Defense

To win on summary judgment, TCP must prove that there is no genuine

issue of material fact as to whether Debtor received equivalent value.  11 U.S.C.

§ 548(a)(1)(B).  The equivalent value defense is distinct from the new value

defense discussed supra.  Jones v. Ryder Integrated Logistics (In re Jotan, Inc.),

264 B.R. 735, 751 n.6 (Bankr. M.D. Fla. 2001).  Jotan explained:

> [T]he requirement of specific proof of valuation separates the
> § 547(a)(2) "new value test from the § 548 reasonably equivalent
> value concept—the former is an economic analysis, while the latter is

12

> merely an anti-fraud provision.  It is this distinction that allows a court
> to conclude that a preferential transfer is not fraudulent under § 548
> because "reasonably equivalent value" was given and at the same time
> to conclude that the same preferential transfer may be avoided
> because insufficient "new value" was provided to satisfy § 547(c)(1)
> or § 547(c)(4).  Not all consideration qualifies as "new value."

Id.

Retirement of prior debt is reasonably equivalent value for purpose of the

fraudulent conveyance defense.  <u>Stalnaker v. Gratton (In re Rosen Auto Leasing,

Inc.)</u>, 346 B.R. 798, 805 (B.A.P. 8th Cir. 2006).  TCP has conclusively shown that

payment it received from Debtor in the two-year fraudulent transfer period was the

exact equivalent value it had advanced.  In other words, TCP recovered transfers

that simply repaid undisputed amounts of antecedent debt.  Trustee does not resist

this point.

## 2.    TCP's Equivalent Value Defense Is Not Barred by Equity

Instead, Trustee argues that TCP should not be permitted to assert the

equivalent value defense because the defense is equitable in nature and TCP was

complicit in either Debtor's or Rubashkin's fraud.  Trustee's argument rests on two

contentions: (1) the equivalent value defense is equitable in nature; (2) TCP acted

inequitably in aiding and abetting the Debtor's fraud.

13

### a.    The Equivalent Value Defense Is Not an Affirmative Equitable Defense

Trustee contends that TCP should be barred from asserting an affirmative defense because TCP seeks an equitable remedy but has unclean hands.  "An affirmative defense 'requires a responding party to <u>admit</u> a complaint's allegations but then . . . assert that for some legal reason [the responding party] is nonetheless excused from liability." <u>Springer v. Okaw Truss, Inc. (In re Top Flight Stairs & Rails Ltd.)</u>, 398 B.R. 321, 325 (N.D. Ill. 2008) (quoting <u>Reis Robotics USA, Inc. v. Concept Indus., Inc.</u>, 462 F. Supp. 2d 897, 906 (N.D. Ill. 2006)).  A bankruptcy court has wide discretion in determining whether to apply the clean hands doctrine of equity.  <u>O'Brien v. Cleveland (In re O'Brien)</u>, 423 B.R. 477, 492 (Bankr. D.N.J. 2010) (citing <u>Precision Instrument Mfg. v. Auto Maint. Mach. Co.</u>, 324 U.S. 806, 815 (1945)).  Otherwise clean hands are tainted when "a party seeking affirmative relief . . . is guilty of conduct involving fraud, deceit, unconscionability, or bad faith . . . ." <u>In re O'Brien</u>, 423 B.R. at 492 (citing <u>Castle v. Cohen</u>, 676 F. Supp. 620, 627 (E.D. Pa. 1987)).

TCP's argument that Debtor received equivalent value is not an affirmative defense.  An essential element of the Trustee's prima facie case of constructive fraud is to show a failure by the defendant to provide the debtor less than

14

equivalent value in the transfer.  Arguing the Trustee has failed to do so is not an affirmative defense and makes no appeal to equity.  <u>In re Top Flight</u>, 398 B.R. at 324.

### b. Debtor's Fraud Cannot Be Imputed to TCP

The Court acknowledges that there are some instances where a transferee's involvement with a debtor's fraud may prevent transferee from asserting some defenses.  "When the transferee or obligee is in a position to dominate or control the debtor's disposition of his property, however, his intent to hinder, delay or defraud creditors may be imputed to the debtor so as to render the transfer fraudulent within section **548(a)(1)(A)**, regardless of the actual purpose of the debtor transferor."  <u>Elway Co., LLP v. Miller (In re Elrod Holdings Corp.)</u>, 421 B.R. 700, 709 (Bankr. D. Del. 2010) (quoting <u>5 Collier on Bankruptcy</u> ¶ 548.01 at 548–24 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. 2009)) (emphasis added).

This rule—by its terms—is limited to cases asserting actual fraud.  Trustee here raised no claim of actual fraud under § 548(a)(1)(A).  Trustee's claim was for constructive fraud under § 548(a)(1)(B), which requires proof of lack of reasonably

15

equivalent value.  Trustee simply cannot rely on a possible defense to a

§ 548(a)(1)(A) claim to try to save its § 548(a)(1)(B) claim.

### D.     TRUSTEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PREFERENTIAL TRANSFER CLAIM

To prove a debtor made a preferential transfer to a defendant/creditor, the

Trustee must show that the transfer (1) was made for the creditor's benefit; (2) was

for a preexisting debt; (3) occurred while the debtor was insolvent; (4) occurred

within ninety days before the filing of the petition—or one year before the filing of

the petition if the creditor is an "insider;" and (5) distributed more to the debtor

than he would have received in a Chapter 7 liquidation.  11 U.S.C. § 547(b).

Trustee bears the burden of establishing facts to support each of these elements.

Id.  Trustee asserts Cohen was an insider and the one-year preference recovery

applies.

Trustee has requested partial summary judgment only on the preferential

transfer claim.  Trustee asks this Court to find there is no genuine issue of material

fact and that he has proved TCP was an insider and the one-year preference

recovery period applies.  11 U.S.C. § 547(b)(4); 11 U.S.C. § 547(b)(3); 11 U.S.C.

§ 547(b)(5).

16

### 1.   Insider Status

As noted, the Trustee may—at most—recover only $71,818.81 from TCP

under a preferential theory based on a one-year preference period.  To recover

using the one-year period, the Trustee must prove TCP was an "insider."  11

U.S.C. § 547(b)(4)(B).  As this Court has previously noted:

> Section 101(31)(B)(vi) defines the term "insider."  Where, as here,
> Debtor is a corporation, the term "insider" includes a "relative of a
> general partner, director, officer, or person in control of the debtor."
> 11 U.S.C. § 101(31)(B)(vi).  Under § 101(45), "relative" is defined as
> an "individual related by affinity or consanguinity within the third
> degree as determined by the common law . . . ." Id.  An "insider" can
> also be what is referred to as a "non-statutory insider."   A non-
> statutory insider "is said to be an entity with a sufficiently close
> relationship to the debtor that its conduct is made subject to closer
> scrutiny than those dealing at arm's length with debtor."   In re
> Riversideworld, Inc., 366 B.R. 34, 43 (Bankr.N.D. Iowa 2007).
> Trustee has alleged that the relationships here establish Defendant as
> both a statutory and non-statutory insider.

Sarachek v. Chabad of N. Fulton, Inc. (In re Agriprocessors, Inc.), Bankr. No. 08-

02751, Adv. No. 10-09131, 2011 WL 4900037, at *6 (Bankr. N.D. Iowa Oct. 14,

2011).  As this Court has also stated:

> The definition [of statutory insider] is not limiting because Congress
> used the word "includes."  Miller Ave. Prof'l & Promotional Servs. v.
> Brady (In re Enter. Acquisition Partners, Inc.), 319 B.R. 626, 631
> (B.A.P. 9th Cir. 2004).  Thus, in addition to those insiders listed in the
> statutory definition—known as per se insiders—there are also
> "insiders" that have a "sufficiently close relationship with the debtor

17

that . . . conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor." Id.

Sarachek v. The Right Place, Inc. (In re Agriprocessors, Inc.), Bankr. No. 08-02751, Adv. No. 10-09123, 2011 WL 4621741, at *7 (Bankr. N.D. Iowa Sept. 30, 2011).

Beyond this definition, the Eighth Circuit determines whether a creditor qualifies as a non-statutory insider status through inquiry into whether the defendant had an ability to control a debtor.  Rosen, 346 B.R. at 804 (citing Carlson v. Farmers Home Admin. (In re Newcomb), 744 F.2d 621, 622 n.4 (8th Cir. 1984)).  The Eighth Circuit B.A.P. has pointed out "the ability of a creditor to compel payment of a debt is insufficient control to render the creditor an insider." Rosen, 346 B.R. at 804 (citing Newcomb, 744 F.2d at 624 n.4).  However, as the Court noted in The Right Place:

> [I]t is not necessary that a non-statutory insider have actual control; rather, the question "is whether there is a close relationship [between the debtor and creditor] and . . . anything other than closeness to suggest that any transactions were not conducted at arm's length." In re KCMVNO, Inc., No. 10–50730(BLS), 2010 WL 4064832, at *4 (Bankr. D. Del. Oct. 15, 2010) (quoting Schubert v. Lucent Techs., (In re Winstar Comm'ns., Inc.), 554 F .3d 382, 396–97 (3d Cir.2009)).

18

Id. at *10.  These inquiries are questions of fact.  Wilson, 712 F.2d at 209.  If TCP

shows that these control aspects are subject to a genuine dispute, summary

judgment is inappropriate.  Fed. R. Bankr. P. 7056.

As the Eighth Circuit B.A.P. and other courts have noted, creditor leverage,

however, is not in and of itself control.  MCA Fin. Grp. v. Hewlett–Packard (In re

Fourthstage Techs., Inc.), 355 B.R. 155, 159–60 (Bankr. D. Ariz. 2006).  A close

relationship between the parties is not enough to conclusively establish the creditor

as an insider; it is not even enough if that close relationship gave the creditor some

extra influence.  Id.

The Fourthstage case provides a good illustration.  In Fourthstage, Hewlett–

Packard ("HP"), had financed Fourthstage's predecessor company, Aperian, so that

it could purchase HP products and resell them.  Id. at 157.  The note required

Aperion to use one-half of all HP financing on the purchase of HP products.  Id.

HP discovered that Aperion had not complied with the terms of the financing

agreement and raised this concern with Fourthstage after it acquired Aperian.  Id.

at 157–58.  HP threatened default on the note, which Fourthstage would have been

required to publicly disclose, a potentially ruinous proposition.  Id.  Fourthstage

elected to settle with HP before declaring bankruptcy less than a year later.  Id.

The court held that HP was not an insider.  Id. at 160.  Though HP almost certainly leveraged the debtor into paying HP, the debtor's acquiescence constituted an action that might have been commercially "appropriate or necessary."  Id.  In Fourthstage, the Court determined that while HP had used leverage to obtain payment, it did so in an unobjectionable commercial context. Id.  It distinguished this type of acceptable influence from another case where a vendor received preferential transfers from a vendee.  Id. (citing Shubert v. Lucent Techs. (In re Winstar Commc'ns, Inc.), 348 B.R. 234, 255 (Bankr. D. Del. 2005), modified on other grounds, 554 F.3d 382, 399 (3d Cir. 2009)).

In Winstar, the vendor Lucent Technologies controlled the distribution network and Winstar was an almost entirely captive buyer whose internal decisions the vendor essentially dictated.  348 B.R. at 280.  Lucent had forced Winstar to borrow from Lucent in order to purchase Lucent products to puff Lucent's sales numbers.  Id.  The court determined that this constituted an unacceptable level of influence tantamount to control, making Lucent an insider and the transfer it received avoidable.  Id. at 280, 283.

In this case, the potential for insider control existed.  However, it is not clear that any of Debtor's payments to Cohen resulted from actual control.  TCP had no

20

equity stake or formal ability to control Debtor.  Though there was a financing

relationship between the parties, this is not determinative of control.  TCP's

"favored nation status," while indicative of a very close relationship, is not by itself

dispositive of an ability to exercise control.  The financing could be viewed as

within TCP's ordinary dealing with Debtor.  TCP viewed it as a function of trade

credit.  So far, there is nothing to show TCP forced Debtor into particular decisions

or financing relationships like Lucent did to Winstar.  On the contrary, it was

Debtor that voluntarily approached TCP for financing.

Whether the financing relationship between Debtor and TCP exceeded

permissible boundaries so as to make TCP an insider is in genuine dispute.  There

is no specific evidence that TCP controlled Debtor.  While there is strong evidence

that principals of TCP and Rubashkin enjoyed a social relationship and were close

friends and business associates, the full nature of Debtor's and TCP's interactions

are in genuine dispute.  Since TCP, as the non-moving party, is entitled to

favorable inferences from this murky relationship, the Trustee is not entitled to

summary judgment on TCP's insider status.

### E.    TCP'S MOTION FOR SUMMARY JUDGMENT ON PREFERENCE CLAIMS

TCP also moved for summary judgment on the Trustee's preferential

transfer claims.  TCP argues Trustee has not established "insider" status as a matter

of law, nor has he proved TCP got more than it would have in bankruptcy through

the transfers.  Thus, TCP argues Trustee fails to show even a prima facie case of a

preference under § 547(b) on the undisputed record.  TCP also argues its

affirmative defense of contemporaneous exchange for new value is established as a

matter of law on this record.  Because the Court already has found a genuine

dispute of material fact on the "insider" question, it will not address that again.  It

will address TCP's other two arguments in turn.

### 1.    Trustee's Ability to Show Defendant Received More than It Would Have in a Chapter 7.

TCP points out that, as part of a successful preferential transfer claim, the

Trustee must also show that the creditor was able to improve its position beyond

what it would have received in bankruptcy.  11 U.S.C. § 547(b)(5).  Courts apply a

hypothetical liquidation test to determine what a given creditor would have

received in bankruptcy had the transfer not been made.  <u>Falcon Creditor Trust v.</u>

<u>First Ins. Funding (In re Falcon Prods.)</u>, 381 B.R. 543, 548 (B.A.P. 8th Cir. 2008).

22

The hypothetical liquidation value of the estate is determined as of the date of the

bankruptcy petition.  Id.  In liquidating an estate, "the law is generally well-settled

that unless creditors would receive a 100% payout, an unsecured creditor who

received a payment during the preference period is in a position to receive more

than it would have received in a Chapter 7 liquidation."  Betty's Homes, Inc. v.

Cooper Homes, Inc. (In re Betty's Homes, Inc.), 393 B.R. 671, 677 (Bankr. W.D.

Ark. 2008).  Here, the facts Trustee presented provide good indication this element

is likely satisfied by the record.  At a minimum, TCP's argument for summary

judgment on this issue must be denied.

### 2.    Contemporaneous Exchange for New Value

TCP also argues that even if Trustee could establish the prima facie elements

for preferential transfers, TCP is entitled to summary judgment on its defense that

it made a contemporaneous exchange for new value to Debtor that would defeat

the Trustee's recovery under 11 U.S.C. § 547(c)(1).

TCP argues that it and Debtor intended to make and in fact made a

contemporaneous exchange for new value on the transfers Trustee is attempting to

recover as a preference.  In order to prevail, TCP must prove (1) each party

intended the exchange to be contemporaneous, (2) that it was actually

contemporaneous, and (3) that the debtor received new value.  11 U.S.C.

§ 547(c)(1); Silverman Consulting, Inc. v. Canfor Wood Prods. Mktg. (In re

Payless Cashways, Inc.), 306 B.R. 243, 249 (B.A.P. 8th Cir. 2004).

Section 547(a)(2) of the Bankruptcy Code defines new value.  "New value

means money, or money's worth in goods, services, or credit, or release by transfer

of property previously transferred to such transferee . . . but does not include an

obligation substituted for an existing obligation."  11 U.S.C. § 547(a)(2).  A debtor

who pays funds to a creditor to pay an antecedent debt has not received new value.

Manchester v. First Bank & Trust Co. (In re Moses), 256 B.R. 641, 652 (B.A.P.

10th Cir. 2000).  "[T]he mere satisfaction of an antecedent debt is not 'new value'

under § 547(a)(2)."  Id.

The Trustee has further noted that even short term loans constitute an

antecedent debt ineligible to be considered "new value."  Velde v. Kirsch, 543 F.3d

469, 473 (8th Cir. 2008).  The Trustee also resists TCP's argument on the basis

that Debtor and TCP had neither intended the exchange to be contemporaneous nor

had TCP succeeded in making such an exchange.

TCP's argument that it made a contemporaneous exchange with Debtor

where TCP provided new value in money, services, credit, or property, is not

24

supported by the undisputed record.  TCP has not conclusively shown Debtor

received new value.  11 U.S.C. § 547(c)(1)(A).  The general testimony in Cohen's

affidavit and the imprecise balance sheet he prepared do not adequately link the

payments Debtor gave to TCP with any significant return to the Debtor of new

value.  Again, simply retiring debt is not new value.  See In re Moses, 256 B.R. at

652.  At a minimum, there are factual questions which remain on what "new"

value TCP provided, even without reaching the issues of exchange and intent.

TCP has not shown specific, uncontroverted facts which entitle it to summary

judgment on this contemporaneous exchange for new value defense.

## CONCLUSION

**WHEREFORE**, the Trustee's Motion for Partial Summary Judgment is

**DENIED** as to the Defendant's insider status.

**FURTHER, Defendant TCP's Motion for Summary Judgment is**

**GRANTED** on Trustee's fraudulent transfer claims and **DENIED** in all other

regards.

Dated and Entered:  April 3, 2013

_____

**THAD J. COLLINS, CHIEF JUDGE**
**UNITED STATES BANKRUPTCY COURT**